IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN SANCHEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-07056 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| JOHNSON, BLUMBERG & ASSOCIATES, ) | |
| LLC and SETERUS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carmen Sanchez has sued Defendants Johnson, Blumberg & Associates, LLC ("JBA") and Seterus, Inc. ("Seterus"),[1] seeking redress for alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* and Regulation X thereunder, 12 C.F.R. § 1024.41(f); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. Now before this Court is Defendants' motion to dismiss Sanchez's complaint. (Dkt. No. 26.)[2] For the reasons explained below, the motion is granted and the complaint is dismissed without prejudice.

---

[1] Sanchez also initially sued the Federal National Mortgage Association ("FNMA"). However, the Court granted Sanchez's motion to dismiss her claim against FNMA voluntarily on December 9, 2016. (Dkt. No. 36.)

[2] The motion to dismiss originally was filed by Defendants FNMA and Seterus only with respect to Counts I (against FNMA and Seterus) as well as Counts III and IV (against Seterus). (Dkt. No. 26.) JBA then moved to join the motion to dismiss, stating that the arguments contained in the motion with respect to Count III (FDCPA claims against Seterus) apply equally to Count II (FDCPA claim against JBA). (Dkt. No. 29.) The Court granted the motion to join. (Dkt. No. 31.)

**BACKGROUND**

For purposes of the instant motion, the Court accepts the facts alleged in Sanchez's complaint as true and draws all inferences in her favor. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

Sanchez alleges that she had a mortgage loan with IndyMac Bank, F.S.B. (Compl. ¶ 9, Dkt. No. 1.) She defaulted on the loan. (*Id.*) At some point thereafter, FNMA took ownership of the loan and Seterus started to service the loan on FMNA's behalf. (Ex. A to Comp. at 4, Dkt. No. 1-1.)[3] Sanchez subsequently submitted a loss mitigation application to Seterus to help keep her home. (*Id.*) In April and March 2016, Seterus sent multiple letters to Sanchez indicating that her application was "facially complete." (*Id.* ¶¶ 10–12.) However, despite this pending application, Seterus (through its attorneys, JBA) filed a complaint to foreclose the mortgage on May 17, 2016. (*Id.* ¶ 13.) Two days later, Seterus sent Sanchez a letter stating that her loan could not be approved for assistance. (*Id.* ¶ 14.) But on May 20, 2016, Seterus offered Sanchez a trial-period plan for a loan modification, which was designed for borrowers who did not meet all the eligibility criteria for a permanent modification under the Federal Home Affordable Modification Program or who had been unable to successfully make their payments under that program or other modification. (*Id.* ¶ 15; Ex. E to Comp. at 2, Dkt. No. 1-5.)

According to Sanchez, as a result of JBA's and Seterus's unlawful collection activities, she has suffered credit damage, economic damage, emotional distress (*i.e.*, confusion, frustration and humiliation), monetary loss, and mental distress. (Compl. ¶ 16, Dkt. No. 1.) And so she has brought the following claims: Count I alleges that Seterus violated Regulation X; Count II alleges

---

[3] It is unclear from Sanchez's complaint at what point Seterus started to service her loan. But Seterus appears to have begun servicing the loan sometime before April 25, 2016—on that date, Seterus sent a letter to Sanchez in response to her application to Seterus for a loss mitigation. (Ex. A to Comp. at 2, Dkt. No. 1-1.)

that JBA violated the FDCPA (in particular, 15 U.S.C. §§ 1692e, e(2), e(5), e(10), (f), and f(1)); Count III also alleges that Seterus violated the FDCPA (in particular, 15 U.S.C. §§ 1692e, e(10), (f), and f(1)); and Count IV alleges that Seterus violated the ICFA (in particular, 815 ILCS 505/2).

## DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations that are merely consistent with the defendant's liability, conclusory statements, and formulaic recitations of the elements of a cause of action are, by themselves, insufficient. *Ashcroft*, 556 U.S. at 678. In analyzing a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in favor of the plaintiff. *Carlson*, 758 F.3d at 826.

    I.    **Sanchez's Claim under RESPA against Seterus (Count I)**

        A.    **Ripeness**

Defendants first argue that Sanchez's RESPA claim must be dismissed because it is not ripe, as Sanchez has not lost her property due to foreclosure.[4]

---

[4] While Defendants make this argument in the context of their Rule 12(b)(6) motion, ripeness is a question of subject-matter jurisdiction best analyzed under Federal Rule of Civil Procedure 12(b)(1). *See Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). Therefore, the Court construes Defendants' motion as arising under Rule 12(b)(1) to the extent it relates to the issue of ripeness. *See, e.g., Stephens v. Capital One, N.A.*, No. 15-cv-9702, 2016 WL 4697986, at *4 (N.D. Ill. Sept. 7, 2016). For purposes of its Rule 12(b)(1) analysis, the Court accepts Sanchez's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in her favor. *Bultasa Buddhist Temple of Chicago*, 878 F.3d at 573.

Federal mortgage-servicing regulations promulgated under RESPA require servicers to give borrowers an opportunity to submit a loss mitigation application before pursuing foreclosure and outline certain procedures that servicers must follow concerning such an application. *See* 12 C.F.R. § 1024.41. In particular, 12 C.F.R. § 1024.41(f)(2), which deals with loss mitigation applications received before foreclosure referral, states:

> If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in [12 C.F.R. § 1024.41(f)(1)] or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> (i) The servicer has sent the borrower a notice pursuant to [12 C.F.R. § 1024.41(c)(1)(ii)] that the borrower is not eligible for any loss mitigation option and the appeal process in [12 C.F.R. § 1024.41(h)] is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii) The borrower fails to perform under an agreement on a loss mitigation option.

The regulation is enforceable pursuant to 12 U.S.C. § 2605(f), which allows individual borrowers to sue for damages. *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)")."); *see also* 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts . . . .").

Ripeness has both constitutional and prudential aspects. *E.F. Transit, Inc. v. Cook*, 878 F.3d 606, 609 (7th Cir. 2018). "A claim is ripe if it is fit for judicial decision and not resolving it will cause hardship to the plaintiff." *Id.* at 610. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016).

4

The caselaw regarding ripeness of claims for violations of 12 C.F.R. § 1024.41 is sparse. But another court in this District did consider the issue in *Stephens v. Capital One, N.A.*, No. 15-cv-9702, 2016 WL 4697986 (N.D. Ill. Sept. 7, 2016). In *Stephens*, the defendant filed a foreclosure complaint alleging that the plaintiffs had missed payments on his mortgage. *Id.* at *1. However, due to a mistake by the defendant, the plaintiffs actually made multiple overpayments on the mortgage. *Id.* The defendant communicated this mistake to the plaintiffs and consequently engaged in negotiations regarding a potential loan modification. *Id.* Although those negotiations were ultimately unsuccessful, the defendant voluntarily dismissed the foreclosure complaint. *Id.* But the plaintiffs still sued the defendant, alleging, among other things, a violation of 12 C.F.R. § 1024.41(f). *Id.* at *2. The defendant moved to dismiss the complaint, arguing that the plaintiffs' RESPA claim was not ripe due to the defendant's voluntary dismissal of the foreclosure complaint and the fact that foreclosure was only a future possibility. *Id.* at *4. Upon considering the argument, the *Stephens* court held that the taking (or loss) of property was not required for the claimed RESPA violation to be ripe. *Id.* at *5. The court found no such requirement in 12 C.F.R. § 1024.41(a), and further reasoned that under 12 U.S.C. § 2605(f) damages may be recovered when a party fails to comply with any provision of RESPA and there is no language indicating that taking property is the only way to fail to comply with RESPA's provisions. *Id.* The court also noted that RESPA is a consumer protection statute and, as such, should be interpreted broadly. *Id.*

This Court agrees with the reasoning in *Stephens*. There is no indication in the language of the statute or regulations that a plaintiff must wait until his or her property is foreclosed upon to bring an action. To the contrary, 12 C.F.R. § 1024.41(f)(2) expressly states that the prohibited action is a servicer making "**the first notice or filing** required by applicable law for any judicial or non-judicial foreclosure process." 12 C.F.R. § 1024.41(f)(2) (emphasis added). And 12 U.S.C.

5

§ 2605(f) provides that "[w]hoever *fails to comply with any provision of this section* shall be liable to the borrower for each such failure." 12 U.S.C. § 2605(f) (emphasis added).

Defendants' reliance on *Wenegieme v. Bayview Loan Servicing*, No. 14 CIV. 9137 RWS, 2015 WL 2151822 (S.D.N.Y. May 7, 2015), is misplaced. In *Wenegieme*, the plaintiffs submitted paperwork seeking a loan modification, but the loan servicer still filed a foreclosure action. *Id.* at *2. As a result, the plaintiffs sought damages for illegal foreclosure and emotional stress. *Id.* The record indicated that foreclosure proceedings were still pending, however, and the plaintiffs had not yet lost their property. *Id.* Accordingly, the court dismissed the plaintiffs' claim for violation of 12 C.F.R. § 1024.41(f), holding that the claim was not ripe because it was "contingent on a negative outcome in a foreclosure proceeding that was still ongoing." *Id. Wenegieme*, however, is not controlling precedent for this Court. And unlike the present case, in which Sanchez alleges that she suffered injuries in the form of harm to her credit and other economic misfortunes as a result of Defendants' filing of a foreclosure action, it appears that the plaintiffs in *Wenegieme* desired monetary relief for the illegal foreclosure itself. Thus, it is unsurprising that the *Wenegieme* court found that the plaintiffs' "claim for damages [wa]s contingent on a negative outcome in a [foreclosure] proceeding that [was then] ongoing—and that they m[ight] yet win." *Id.* at *2.[5]

This Court thus rejects Defendants' claim that Sanchez's claim is not yet ripe.

---

[5] Defendants also cite *Simmons v. Wells Fargo Bank, N.A.*, No. 14-CV-333-LM, 2015 WL 4759441 (D.N.H. Aug. 11, 2015). But as with *Wenegieme*, *Simmons* is not controlling precedent here and it differs from the present case because the nature of the plaintiff's claim in *Simmons* was the foreclosure itself, not the injuries from filing the foreclosure.

6

B.     **Sufficiency of damages pleading and standing**

Defendants further argue that Sanchez's RESPA claim fails because actual damages and any casual connection between her claimed damages and the alleged RESPA violation are insufficiently pleaded.

Failure to plead actual damages is fatal to a RESPA claim. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590 (7th Cir. 2016); *see also Stephens*, 2016 WL 4697986, at *3. The requirement to plead actual damage is not a mere pleading formality—rather, it limits the cause of action to circumstances in which a plaintiff can show that the defendant's failure to adhere to regulations has caused actual harm. *See, e.g., Copeland v. Lehman Bros. Bank, FSB*, No. 09CV1774-WQH-RBB, 2011 WL 9503, at *3 (S.D. Cal. Jan. 3, 2011). "The remedy portion of the statute indicates that the statute was intended to redress ***actual*** damages caused by the failure of the loan servicer to provide information to the borrower." *Diedrich*, 839 F.3d at 589; *see also* 12 U.S.C. § 2605(f). Actual damages are not confined to pecuniary losses only. *See, e.g., Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (emotional distress damages are available as actual damages under RESPA). Additionally, when basing a claim on actual damages, the plaintiff has the responsibility to set forth a causal link between the defendant's violation and the plaintiff's injuries. *Stephens*, 2016 WL 4697986, at *3.

As a related matter, "[w]hether raised by the parties or not, a court must assure itself that the plaintiff has standing, such that there exists a case or controversy as required by Article III of the Constitution." *Diedrich*, 839 F.3d at 588. To have standing, Sanchez (1) must have suffered an injury in fact, (2) that is fairly traceable to Defendants' challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *See id.* at 587–88. Sanchez has the burden of establishing these elements. *Id.* at 588. At the pleading stage, general factual allegations of injury

7

resulting from Defendants' conduct may suffice. *See id.* In other words, to survive dismissal for lack of standing, Sanchez's "complaint must contain sufficient factual allegations of an injury resulting from the [D]efendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Id.* In the present case, while Defendants do not frame their challenge to Sanchez's lack of damages as one of standing, the injury requirement for standing overlaps with the injury requirement under RESPA. *Id.* at 589. Sanchez must have suffered a concrete injury to allege standing as a constitutional matter. *Id.* And the RESPA "statute does not grant statutory damages for bare procedural violations; it requires an actual injury." *Id.* Therefore, the injury must be "actual" for standing purposes and for purposes of the statute. *Id.*

In paragraph 30 of her complaint, Sanchez alleges that "[a]n award of actual damages is appropriate as Plaintiff has suffered credit damage, economic damage, emotional distress (i.e., confusion, frustration and humiliation)[,] monetary loss[,] and mental distress." (Compl. ¶ 30, Dkt. No. 1.) Sanchez argues that this allegation establishes "how the alleged [RESPA] violation was causally connected to the claimed actual damages." (Pl.'s Resp. at 5, Dkt. No. 32.) But conclusory statements devoid of any factual allegations indicating how the plaintiff was damaged by the alleged unlawful conduct are insufficient. *See Copeland v. Lehman Bros. Bank, FSB*, No. 09CV1774-WQH-RBB, 2011 WL 9503, at *4 (S.D. Cal. Jan. 3, 2011) (finding insufficient allegations that "[a]s a proximate result of the negligent conduct of [defendant] . . . [the p]laintiff sustained damages, including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, and other damages to be determined at trial"); *see also Konieczka v. Wachovia Mortg. Corp.*, No. 11 C 0071, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012) (holding that the plaintiffs' allegations of damage to their credit score, without

allegations of any consequences from their lower credit rating, were insufficient to state actual damages).

To support her argument that she has pleaded actual damages sufficiently, Sanchez cites *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809 (N.D. Ill. 2001). But *Johnstone* is inapposite. The plaintiff in *Johnstone* alleged that due to the defendant's RESPA violations she had to pay late fees and the defendant actually foreclosed on her property. *Id.* at 814. Thus, her allegations were not just generic statements, as Sanchez offers here. Moreover, the *Johnstone* court found that a plaintiff is not injured by an inaccurate credit report unless that false information is communicated to and used by a third party. *Id.* at 816–17; *cf. Diedrich*, 839 F.3d at 590 (holding that allegations of damages to the plaintiffs' credit accompanied by allegations that the plaintiffs were forced to pay greater payments and interest rates met the bare minimum requirement to allege standing). But here, Sanchez's complaint is silent as to the nature of her credit-related injury and any communications to or use by third parties.

Accordingly, Sanchez has failed to plead actual damages adequately and her claim against Seterus under RESPA must be dismissed.

**II.     Sanchez's Claims against JBA and Seterus under the FDCPA
         (Counts II and III)**

Defendants next argue that Sanchez's FDCPA claims fail because she does not sufficiently allege conduct that violated the FDCPA—that is, the use of "unfair or unconscionable means," 15 U.S.C. § 1692f, or "false, deceptive, or misleading representation or means," 15 U.S.C. § 1692e.

The FDCPA prohibits entities qualifying as debt collectors from engaging in abusive, deceptive, or unfair acts. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Specifically, 15 U.S.C. § 1692e provides, in pertinent parts:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt . . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Meanwhile, 15 U.S.C. § 1692f states, in pertinent parts:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

In this case, Sanchez alleges that Defendants violated § 1692f and § 1692f(1) by taking an action that violates RESPA—namely, by filing a foreclosure complaint while her "facially complete" loss mitigation application was pending. (Compl. ¶¶ 45, 46, 61, 62, Dkt. No. 1.)

The FDCPA does not define what is "unfair or unconscionable" under § 1692f. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015). However, the statute provides a list of eight illustrative violations. While Sanchez does not bring her claims under § 1692f(6), the language of that subsection is instructive—this subsection prohibits "[t]aking or threatening to take any *nonjudicial action* to effect dispossession or disablement of property" under various circumstances, including if "the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6) (emphasis added). The provision implies "that state judicial proceedings are outside the scope of § 1692f." *Bentrud*, 794 F.3d at 875 (quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 475 (7th Cir. 2007)). Thus, while subsection (6) is merely one of eight illustrations in a non-exhaustive list, it is highly doubtful that a state

10

action filed to collect on an overdue debt could qualify as an "unfair or unconscionable" act under the FDCPA. *Id*. Moreover, § 1692f does not even hint at being an enforcement mechanism for other rules of state and federal law. *Beler*, 480 F.3d at 474. If Defendants violated RESPA, that statute and the regulations accompanying it should be applied. *See id.* (if defendant "violated the Social Security Act, that statute's rules should be applied," not § 1692f; "[l]ikewise if the [defendant] violated Illinois law, Section 1692f does not take a state-law dispute and move it to federal court"). For this reason, the Court concludes that Sanchez's claims under § 1692f and § 1692f(1), to the extent they are based on the mere violation of RESPA, are dismissed. *See Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *4 (N.D. Ill. Mar. 30, 2017) (dismissing § 1692f claim because plaintiffs "attempt[ed] to use the FDCPA as a vehicle for enforcing matters governed by state law—in this case, state usury laws"); *cf. Butler v. J.r.S-I, Inc.*, No. 15 C 6059, 2016 WL 1298780, at *6 (N.D. Ill. Apr. 4, 2016) (distinguishing the plaintiff's case from *Beler* and *Bentrud* because the plaintiff sought "only to enforce the FDCPA" and defendants did "not even hazard a guess as to what state law they [were] alleged to have violated").

The Court next turns to Sanchez's claims under § 1692e. While it is clear that § 1692f may not be used as an enforcement mechanism for matters governed elsewhere by state or federal law, the Seventh Circuit has not yet clearly applied the same principle to claims under § 1692e. *See Eul*, 2017 WL 1178537, at *4 (discussing the absence of Seventh Circuit authority on the issue). But whether an alleged violation of RESPA may be used as a basis for a claim under § 1692e need not be resolved here.

Interpreted in the light most favorable to her, Sanchez's allegations of wrongful conduct under § 1692e differ from those in her claims under § 1692f. She does not state that Defendants violated § 1692e by filing the complaint against her, as she does in her claims under § 1692f.

11

(*Compare* Compl. ¶ 46, *with* Compl. ¶¶ 42, 43, Dkt. No.1.) Instead, she alleges that Defendants violated § 1692e(2) "by falsely representing the amount, character or legal status of Plaintiff's mortgage loan at the time it filed its Complaint to Foreclose Mortgage when it knew (or should have known) that Seterus, Inc. was in receipt of Plaintiff's 'facially complete' loss mitigation application." (*Id.* ¶ 42.) Sanchez further alleges that, in violation of § 1692e(5), Defendants threatened to take various actions that could not have been legally be taken. Thus, viewed in the light most favorable to Sanchez, it appears that she actually complains about improper representations and threats by Defendants at the time they filed the foreclosure action, not simply the filing of the complaint.

With regard to "false, deceptive, or misleading representations," § 1692e requires an inquiry into "(1) whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer if the consumer is not represented by counsel or (2) whether a competent attorney would be deceived, even if he is not a specialist in consumer debt law." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016). This determination is fact-bound and, in making this determination regarding a consumer, a district court must "tread carefully" as "judges are not good proxies for the 'unsophisticated consumer' whose interest the statute protects." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). Thus, "Rule 12(b)(6) dismissal on that issue is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief." *Id.* Moreover, "representations may violate § 1692e of the FDCPA even if made in court filings in litigation." *Id.*

But while Sanchez alleges that Defendants made false representations and threats, she provides no factual support for those allegations. Nothing in the complaint suggests there were any communications with Defendants, let alone false representations or threats. To the contrary,

12

her complaint suggests that she was blindsided by the foreclosure action: on May 16, 2016, Seterus sent her a letter saying that her loss mitigation application was "facially complete," but on May 17, 2016, the foreclose complaint was filed. (Compl. ¶¶ 12, 13, Dkt. No. 1.) Furthermore, other than the offer from Seterus to participate in a trial-period plan (*id.* ¶ 15), the complaint is silent as to whether the parties communicated after the foreclosure complaint was filed. Accordingly, this Court cannot reasonably infer that there were any false representations or threats by Defendants. Sanchez has once again has pleaded only legal conclusions without any factual allegations to support her claims. *Williams v. Selene Fin. LP*, No. 15 C 7115, 2016 WL 4493500, at *4 (N.D. Ill. Aug. 26, 2016) (dismissing plaintiff's §1692e claim because plaintiff only plead legal conclusions and failed to provide facts that would put defendant on notice as to what it is expected to defend). Therefore, her § 1692e claims are dismissed as well.

> III.     Sanchez's Claim against Seterus under the ICFA (Count IV)

Lastly, Defendants argue that Sanchez's claim under the ICFA against Seterus must be dismissed because, among other things, her complaint does not allege that she suffered any actual pecuniary losses stemming from Seterus's conduct.

As the Illinois Supreme Court has explained, the ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices. It is to be liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The statute describes unfair and deceptive practices as

> including but not limited to the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.

815 ILCS 505/2. To plead adequately a private cause of action for violation of the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002); *see also De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009). The actual damage element of a private ICFA action requires that the plaintiff suffer "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)). Allegations of emotional distress, inconvenience, and aggravation do not, by themselves, constitute damages under the ICFA. *See Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1054 (Ill. App. Ct. 2009).

Sanchez argues that Defendants have overlooked her "allegations of economic damages—specifically, time and money retaining counsel to deal with wrongful foreclosure proceedings—resulting from Seterus, Inc.'s unfair conduct." (Pl.'s Resp. at 11, Dkt. No. 32.) But Sanchez's complaint does not actually contain any such allegations—it only contains conclusory allegations that "[a]n award of actual damages is appropriate as Plaintiff has suffered credit damage, economic damage, emotional distress (i.e., confusion, frustration and humiliation) monetary loss; and mental distress." (Compl. ¶ 74, Dkt. No. 1.) The complaint alleges that a foreclosure complaint was filed (*id.* ¶ 13), but there is no other information regarding the foreclosure proceeding other than an indication that Defendants might have threatened to take an action (such as obtaining a judgment of foreclosure and sale or order granting possession). (*See, e.g.*, *id.* ¶ 43.) Thus, as with the RESPA claims above, the Court cannot reasonably infer that Sanchez incurred actual damages due to Seterus's conduct. Hence, her claim under ICFA is also dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 29) is granted. All of the counts in the complaint are dismissed without prejudice. Sanchez is granted a leave to amend her complaint to cure the pleading deficiencies outlined above, if she is able to do so, by September 7, 2018.

ENTERED:

Dated: August 14, 2018

Andrea R. Wood
United States District Judge